# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER EVAN VANDERWERFF, | 1:13-cv-00521-LJO-BAM (PC) |
| Plaintiff, | SCREENING ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND |
| v. | (ECF No. 1) |
| K. ALLISON, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

### I. Screening Requirement and Standard

Plaintiff Christopher Evan Vanderwerff ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on February 13, 2013. The matter was transferred to this Court on April 11, 2013. Plaintiff's complaint, filed on February 13, 2013, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at R. J. Donovan Correctional Facility in San Diego, California. The events alleged in Plaintiff's complaint occurred while he was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California and while he was housed at Pleasant Valley State Prison ("PVSP") in Coalinga, California. Plaintiff names twenty-eight different defendants in their individual and official capacities.

### Count One

In Count One, Plaintiff asserts a claim for violation of the Eighth Amendment based on the following factual allegations:

On February 12, 2011, Plaintiff was performing his assigned job duties at CSATF in the Facility D Dining Scullery. Plaintiff was instructed by Supervisor C. Knight to move a double door CRIMSCO Meals on Wheels tray cart full of clean trays from the scullery to the back door of the dining hall. When Plaintiff had to maneuver the cart around the corner of the narrow

1 walkway, his left middle fingertip was caught between upright handles that were welded on the
2 cart and the cinder block wall of the kitchen.  The end of his left middle finger was severed off.
3 Plaintiff informed Doe Defendants #8 and #9 of his injury and went to the Facility D medical
4 clinic.  While in the medical clinic, Custody Medical Officer Cerda retrieved Plaintiff's severed
5 fingertip and placed it in a small plastic bag with ice.

6      Defendant Doe #2, a plant operations welder, welded 1" square iron tubing handles
7 vertically on the ends of the cart, which stuck out farther than the safety rim around the bottom
8 of the cart that is designed to prevent injury to the person handling the cart.  The safety rim
9 protrudes about 2" farther than the corners of the cart so that the safety rim hits the wall and not
10 the body of the cart.  Defendant Wardens, Captains, Supervisors, Officers, Cooks, Welders,
11 CSATF staff and Does 1-9 negligently authorized and failed to inspect the cart.  They failed to
12 realize the danger involved in altering the cart and welding handles not installed by the
13 manufacturer.

14      On several occasions, Defendants #8 and #9 were informed by Plaintiff and other inmate
15 workers that the handles were either broken off or that minor injuries had occurred.  Defendants
16 #8 and #9 instructed Plaintiff to do what he was told and to keep his mouth shut or he would
17 receive a disciplinary CDC 115 and be fined.

18      Plaintiff claims that as a result of the negligence he has sustained injuries and damages,
19 including complete loss of his left middle finger and use of his left hand, pain and suffering and
20 emotional trauma.

21      <u>Count Two</u>

22      In Count Two, Plaintiff asserts a violation of the Due Process Clause of the Fourteenth
23 Amendment and denial of access to the courts in violation of the First Amendment based on the
24 following allegations:

25      On February 23, 2011, Plaintiff filed a CDC 602 form regarding his left middle finger
26 being cut off while at work.  When he did not receive a CDC 695 Verification Form after two
27 weeks, Plaintiff filled out a CDCR 22 Inmate Request to the Appeals Coordinator at CSATF
28 regarding the status of his appeal.  The response was that the appeal was never received.  During

1  this time, Plaintiff was placed in Ad Seg for a false charge and not given any writing material for
2  a couple of weeks.  Plaintiff resubmitted a 602 regarding his issue and it was screened out not
3  once, but four times even after following regulations by Defendant S. Zinani.  Plaintiff submitted
4  another 602 to R. Hall, the Appeals Coordinator Supervisor, but it again was screened out by
5  Defendant Zinani.  A few weeks later, Plaintiff saw R. Hall and asked him why he was not
6  processing Plaintiff's appeals.  R. Hall stated, "If I process your 602 I open the door for a
7  lawsuit, but without a processed appeal you can't take us to court."  Plaintiff was unable to
8  exhaust his administrative remedies to the highest level.

     <u>Count Three</u>

In Count Three, Plaintiff asserts a claim for "cruel and unusual punishment medical negligence" in violation of the Eighth Amendment based on the following allegations:

On February 12, 2011, while working at his assigned work position at CSATF, Plaintiff's left middle finger was cut off when his finger was caught between the double door CRIMSCO Meals on Wheels car and the block wall.  Plaintiff reported to his supervisors and went to Facility D medical clinic.  Correctional Officer Cerda went to dining, found Plaintiff's fingertip and put it into a small plastic bag with ice.  At Facility D medical, Nurses Mulkern and Cagney wrapped Plaintiff's hand in dressing and sent him by ambulance with his severed fingertip in a bag of ice to CSATF/SP CTC TTA.  Plaintiff then was seen by Nurse A. Kirby.  Nurse Kirby stated that Dr. G. Ugwueze was sending Plaintiff to the hospital.  Nurse Kirby gave Plaintiff a shot of pain medication.  Nurse Kirby then took Plaintiff's fingertip out of the plastic bag and put it in a new urine specimen cup filled with saline.  Plaintiff asked Nurse Kirby if he was supposed to keep it on ice, but Nurse Kirby stated that he was doing what the doctor ordered.  Plaintiff was sent to Mercy Hospital Bakersfield, about two hours away from CSATF/SP.  By the time Plaintiff was seen by the ER physician, it was several hours later.  When custody officers handed Plaintiff's severed fingertip in the cup of saline to the doctor, the doctor looked at it and said so much for being able to sew it back on because it had been soaking in a cup of saline.  The doctor said it kills the tissue and threw it in the trash.  The doctor then cleaned up the end of Plaintiff's

finger, wrapped it and sent Plaintiff back to CSATF with instructions and recommendations for ortho consultation.

When Plaintiff returned to CSATF, they did nothing to refer Plaintiff to an orthopedist. The next day, on February 13, 2011, Plaintiff went to medical in excruciating pain and said he needed to see someone. Plaintiff was told to go back to his cell and they would call him later. Plaintiff waited all day and night without sleep and crying in pain. On February 14, 2011, Plaintiff asked his building officer to call medical. The officer sent Plaintiff to the clinic where he was seen by Nurse Powell.

Nurse Powell changed and checked Plaintiff's dressing. When Nurse Powell changed the dressing, there was broken bone and meat on the stump. She told PA Byers that he needed to see Plaintiff, but he was busy. Plaintiff pressed Nurse Powell about severe pain, inability to sleep and an ortho doctor referral. Nurse Powell said that she would talk PA Byers and sent Plaintiff back to his cell. Later that day, Plaintiff was given a pain pill.

On February 15, 2011, Plaintiff went to the medical clinic again because his finger was getting worse. Plaintiff asked Nurse Powell if PA Byers wrote the referral to ortho, but she said no. When Nurse Powell unwrapped Plaintiff's hand, his finger was discolored with broken bone. Nurse Powell argued with PA Byers and made him check Plaintiff's hand. PA Byers wrote an urgent referral to Dr. Smith and ordered some antibiotics. Dr. Smith told Plaintiff that he needed immediate surgery.

On February 17, 2011, Plaintiff underwent the first revision amputation, which took the end of his middle finger down to the first knuckle. After surgery, PA Byers did not follow the surgeon's recommended post-operative plan of care, which included physical therapy and significant pain management. Plaintiff finally started receiving minimal medical care after he filed many grievances. Plaintiff alleges that when he submitted medical request forms, Nurse Hunt would not triage Plaintiff or schedule him for the doctor.

In September 2011, after another surgery that removed Plaintiff's finger completely to the knuckle of his fist, Dr. Smith asked PA Byers to put a medical hold on Plaintiff so that he could complete the last surgery on Plaintiff's hand. PA Byers refused and Plaintiff was

transferred to PVSP on November 1, 2011.  Plaintiff's hand was not fixed and he was in severe pain.

On November 8, 2011, after his transfer to PVSP, Plaintiff saw his primary care physician, PA J. Fortune, on the Facility A medical clinic.  Plaintiff explained the status of hand and his pending amputation surgery scheduled with Dr. Smith.  PA Fortune told Plaintiff that Dr. Smith did not work at PVSP and that Plaintiff would have to see an ortho from PVSP.  PA Fortune then questioned Plaintiff about the dose of narcotic pain medication that he was receiving for his hand.  PA Fortune told Plaintiff that he wanted to see what the new ortho doctor had to say.  PA Fortune told Plaintiff that he would taper Plaintiff off the meds so that he would not go through severe detox from long use of pain management narcotics.

On November 28, 2011, Plaintiff saw Dr. Lewis, a PVSP orthopedist.  Dr. Lewis recommended that Dr. Smith or a University Medical Hand Specialist be used.

On November 28 and 30, 2011, Plaintiff put in CDC 7362 medical slips to seek the doctor regarding his medication.  Plaintiff explained that if his meds were cut off suddenly he would go into severe detox.  Plaintiff was never called to medical.

On December 1, 2011, Plaintiff told LVN Gonzalez that PA Fortune was supposed to taper Plaintiff's meds.  She told Plaintiff to fill out a 7362.  Plaintiff filled out another 7362 on December 2, 2011.  By that time, Plaintiff had started vomiting and having diarrhea.  Plaintiff told Correctional Officer Dutra that he had an emergency medical need and needed to see the nurse.  Correctional Officer Dutra told Plaintiff to fill out a 7362.  Plaintiff filled out another 7362 on December 3, 2011.  By that time, he had not slept or eaten since December 1, 2011, and had been vomiting and voiding non-stop.  Plaintiff told Defendant Gonzalez every night when she came to the building, but she said that she just passed out pills.

On December 6, 2011, Plaintiff was seen by Nurse Martin.  Nurse Martin told Plaintiff that he had an appointment with PA Fortune on December 9, 2011, and she was not going to do anything until then.  Plaintiff was sent back to his cell in severe detox.

On December 8, 2011, Plaintiff saw PA Fortune.  PA Fortune would not give Plaintiff pain medication even after Dr. Lewis said that Plaintiff needed another surgery.  Plaintiff asked

6

why PA Fortune did not taper his medication. PA Fortune stated that none of the nurses or officers told him. Plaintiff asked to be expedited for surgery to improve the pain. It took 3 months to get another consultation. During that time, Plaintiff had extreme pain. When Plaintiff finally received the surgery in April 2012, his post-operative care was neglected. He was left in severe pain with days and months of no pain relief. Plaintiff alleges that he is now losing more function of his hand and requires another surgery.

Requested Relief

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

### III. Discussion

#### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint contains multiple conclusory statements regarding liability and does not contain sufficient factual information to state plausible claims to relief against numerous defendants. If Plaintiff elects to amend his complaint, he must set forth a short and plain statement of the factual allegations against each individual defendant.

#### B. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1  42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between
2  the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See
3  Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978);
4  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held
5  that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning
6  of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits
7  to perform an act which he is legally required to do that causes the deprivation of which
8  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).
9      In his complaint, Plaintiff fails to link the following defendants to any of his claims:
10 Allison, Kephart, Santoro, Denny, Doe 1, Doe 3 and Doe 5, Enenmoh, Sherman, Martinez,
11 Conway, Baniga and Haggard.  If Plaintiff amends his complaint, he should link each defendant
12 to a deprivation of a constitutional right.  Simply listing persons by their job descriptions in a
13 conclusory manner (ECF No. 1, p. 7) is not sufficient to satisfy the statutory requirement.

### C. Eleventh Amendment and Official Capacity

15     To the extent Plaintiff seeks to bring claims against defendants in their official capacity,
16 he may not do so.  The Eleventh Amendment prohibits suits for monetary damages against a
17 State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of
18 Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  As such, the Eleventh Amendment bars any
19 claim for monetary damages against defendants in their official capacities.

### D. Federal Rule of Civil Procedure 18

21     Plaintiff is raising different claims against different defendants at different facilities.
22 Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ.
23 P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507
24 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as
25 (1) the claim arises out of the same transaction or occurrence, or series of transactions and
26 occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2);
27 Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co.
28 of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly

joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not bring claims against unrelated defendants in this action. For example, Plaintiff may not pursue a claim against defendants at CSATF related to his injury, while simultaneously pursuing a claim for deliberate indifference to serious medical needs against defendants at PVSP. If Plaintiff elects to amend his complaint, Plaintiff shall choose which claims he wishes to pursue in this action. If Plaintiff does not do so and his amended complaint sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined.

### E. Count One – Eighth Amendment Violation

In Count One, Plaintiff asserts a claim for violation of his Eighth Amendment rights resulting from the injury to his finger against Defendant Knight and Does 2 and 4. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials

1  were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer,
2  511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels,
3  554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731;
4  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

5       Here, Plaintiff has failed to allege sufficient facts to state a viable claim for violation of
6  the Eighth Amendment arising from the loss of his fingertip.  Plaintiff has not demonstrated that
7  prison officials knew of a substantial risk of serious harm to his safety from handles welded onto
8  the Meals on Wheels tray cart and were deliberately indifferent to that risk.  At best, prison
9  officials knew that handles had broken off or that "minor injuries occurred."  (ECF No. 1, p. 6.)
10  Plaintiff will be given leave to cure this deficiency.

11       To the extent that Plaintiff seeks to pursue a tort claim for negligence under California
12  law, the Government Claims Act requires exhaustion of those claims with the California Victim
13  Compensation and Government Claims Board, and Plaintiff is required to specifically allege
14  compliance in his complaint.  Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal.
15  2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe
16  v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001);
17  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v.
18  Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

19            **F.  Count Two – Fourteenth Amendment and First Amendment**

20       In Count Two, Plaintiff complains of an inability to pursue his grievances regarding the
21  loss of his fingertip in violation of the Due Process Clause of the Fourteenth Amendment.
22  Plaintiff also complains of an inability to access the courts in violation of the First Amendment.

23       Due Process Claim

24       Certain of Plaintiff's claims arise from Defendants' involvement in the inmate appeals
25  process.  Plaintiff cannot pursue any claims against staff relating to their involvement in the
26  administrative review of his inmate appeals.  The existence of an inmate appeals process does
27  not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a
28  particular result or that the appeals process was deficient.  Ramirez v. Galaza, 334 F.3d 850, 860

1  (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  To state a claim under
2  section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his
3  rights, Iqbal, 129 S.Ct. at 1949, and liability may not be based merely on Plaintiff's
4  dissatisfaction with the administrative process or a decision on a grievance, Ramirez, 334 F.3d at
5  860; Mann, 855 F.2d at 640.

Access to Courts Claim

7  Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey,
8  518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access is merely the
9  right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal
10 appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the
11 courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained"
12 (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried
13 (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15, 122 S.Ct. 2179, 2185–
14 87, 153 L.Ed.2d 413 (2002). A prisoner alleging a violation of his right of access to the courts
15 must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349–50.  The actual
16 injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had
17 been frustrated or was being impeded." Id. at 353. The Supreme Court rejected the notion that
18 the state must enable a prisoner to "litigate effectively once in court." Id. at 354 (quoting and
19 disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825–26, 97 S.Ct. 1491, 52
20 L.Ed.2d 72 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898–900 (9th Cir.1995)
21 (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil
22 rights action or petition for writ of habeas corpus).

23 Here, Plaintiff alleges that his attempts to submit inmate appeals regarding his fingertip
24 injury were frustrated by prison officials and he was prevented from exhausting his
25 administrative remedies.  At this juncture, Plaintiff has not alleged (nor can he) an actual injury
26 related to his inability to pursue administrative remedies.  Plaintiff is currently pursuing the
27 claims related to his finger in this action.
28 ///

### G.  Count Three – Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir .2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' "and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir.2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9 t h Cir. 2010). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837.

Generally, Plaintiff's deliberate indifference claim is brought against different defendants at different institutions involving separate instances occurring at different times.  As noted above, Plaintiff must choose which claim he seeks to pursue against which defendants.  The Court now turns to Plaintiff's deliberate indifference claims against the individual defendants.

<u>Kirby and Ugwueze</u>

Plaintiff alleges that Defendants Kirby and Ugwueze acted with deliberate indifference by placing his fingertip in a cup of saline.  (ECF No. 1, p. 9.)  At best, Plaintiff's allegations against Defendants Kirby and Ugwueze amount to medical malpractice or gross negligence. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious

medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).  Plaintiff will be given leave to cure this deficiency.

### Smith

Plaintiff alleges that Defendant Smith performed surgery on Plaintiff and made recommendations for Plaintiff's post-operative care.  (ECF No. 1, p. 11.)  Plaintiff has not alleged that Defendant Smith knew of a serious medical need and failed to adequately respond. Simmons, 609 F.3d at 1018.  Plaintiff will be given leave to cure this deficiency.

### Freeman

Plaintiff alleges only that he needs another surgery by Defendant Dr. B. Freeman.  (ECF No. 1, p. 14.)  Plaintiff has not alleged that Defendant Freeman knew of a serious medical need and failed to adequately respond.  Simmons, 609 F.3d at 1018.  Plaintiff will be given leave to cure this deficiency.

### Martin

Plaintiff alleges that Defendant Martin refused to do anything on December 6, 2011, because Plaintiff had an appointment with Defendant Fortune on December 9, 2011.  Plaintiff then saw Defendant Fortune on December 8, 2011.  (ECF No. 1, pp. 13-14.)  Plaintiff fails to state a claim against Defendant Martin based on a brief, isolated incident of neglect.  Wood, 900 F.2d at 1334 (mere negligence or isolated occurrences of neglect are insufficient to establish deliberate indifference).  Plaintiff will be given leave to cure this deficiency.

### Dutra

Plaintiff alleges that he complained to Defendant Dutra on December 2, 2011, that he had emergency medical needs, but was told to fill out a 7362.  Plaintiff filled out the 7362 on December 3, 2011.  (ECF No. 13.)  Plaintiff fails to state a claim against Defendant Dutra based on a brief, isolated incident.  Wood, 900 F.2d at 1334 (mere negligence or isolated occurrences of neglect are insufficient to establish deliberate indifference).  Plaintiff will be given leave to cure this deficiency.

///

///

Byers, Hunt, Fortune, and Gonzalez

Plaintiff has alleged deliberate indifference claims against Defendants Byers, Hunt, Fortune, and Gonzalez. However, Defendants Byers and Hunt were involved in Plaintiff's care at CSATF before November 2011, whereas Defendants Fortune and Gonzalez were involved in Plaintiff's care at PVSP after November 2011. As noted above, Plaintiff may not pursue all of these claims in a single action.

### H.  Injunctive Relief

Plaintiff seeks injunctive relief in the form of pain medication from defendants. However, Plaintiff is no longer incarcerated at either CSATF or PVSP. Instead, he has been transferred to R. J. Donovan Correctional Facility. As a result, his claim for injunctive relief is now moot. See Holt v. Stockman, 2012 WL 259938, *6 (E.D. Cal. Jan.25, 2012) (a prisoner's claim for injunctive relief is rendered moot when he is transferred from the institution whose employees he seeks to enjoin); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007).

### IV.  Conclusion and Order

Plaintiff's complaint violates Federal Rules of Civil Procedure 8 and 18 and it contains numerous pleading deficiencies. However, the Court will provide Plaintiff with the opportunity to file an amended complaint to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Therefore, Plaintiff's

amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Plaintiff's complaint is dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 18;

3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and

4. <u>If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **April 24, 2014**                     /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE