# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER EVAN VANDERWERFF, | ) 1:13-cv-00521-LJO-BAM (PC) |
| | ) |
| Plaintiff, | ) SCREENING ORDER DISMISSING |
| | ) AMENDED COMPLAINT AND |
| v. | ) GRANTING LEAVE TO AMEND |
| | ) (ECF No. 26) |
| K. ALLISON, et al., | ) |
| | ) |
| Defendants. | ) THIRTY-DAY DEADLINE |
| | ) |
| _____ | ) |

## I.      Screening Requirement and Standard

Plaintiff Christopher Evan Vanderwerff ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on February 13, 2013.  The matter was transferred to this Court on April 11, 2013.  On April 25, 2014, the Court dismissed Plaintiff's complaint with leave to amend.  (ECF No. 15.)  Plaintiff's first amended complaint, filed on December 8, 2014, is currently before the Court for screening.  (ECF No. 26.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.   **Plaintiff's Allegations**

Plaintiff is currently housed at R. J. Donovan Correctional Facility in San Diego, California.   The events alleged in Plaintiff's complaint occurred while he was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California and at Pleasant Valley State Prison ("PVSP") in Coalinga, California.   Plaintiff names more than twenty-eight different defendants in their individual and official capacities.

Count One

In Count One, Plaintiff asserts a claim for violation of the Eighth Amendment based on the following factual allegations:

On February 12, 2011, Plaintiff was performing his assigned job duties at CSATF in the Facility D Dining Scullery.  Plaintiff was instructed by Supervisor C. Knight to move a double

1   door CRIMSCO Meals on Wheels tray cart full of clean trays from the scullery to the back door

2   of the dining hall.  When Plaintiff had to maneuver the cart around the corner of a narrow

3   walkway, his left middle fingertip was caught between upright handles that were welded on the

4   cart and the cinder block wall of the kitchen.  The end of his left middle finger was severed off.

5   Plaintiff informed Defendants Doe #4 and Knight of his injury and went to the Facility D

6   medical clinic.  While in the medical clinic, Custody Medical Officer Cerda retrieved Plaintiff's

7   severed fingertip and placed it in a small plastic bag with ice.

8          Defendant Doe #2, a plant operations welder, welded 1" square iron tubing handles

9   vertically on the ends of the cart, which stuck out farther than the safety rim around the bottom

10  of the cart, which is designed to prevent injury to the person handling the cart.  The safety rim

11  protrudes about 2" farther than the corners of the cart so that the safety rim hits the wall and not

12  the body of the cart.  Defendants Wardens, Captains, Supervisors, Officers, Cooks, Welders,

13  CSATF staff and Does 1-9 negligently authorized and failed to inspect the cart.  They also failed

14  to realize the danger involved in altering the cart and welding handles not installed by the

15  manufacturer.

16         On several occasions before Plaintiff's injury, Defendants Doe #4 and Knight were

17  informed by Plaintiff and other inmate workers that the handles were either broken off or that

18  minor injuries had occurred.  Defendants Doe #4 and Knight instructed Plaintiff to do what he

19  was told and to keep his mouth shut or he would receive a disciplinary CDC 115 and be fined.

20         Plaintiff claims that as a result of the negligence he has sustained injuries and damages,

21  including complete loss of his left middle finger and use of his left hand, pain and suffering and

22  emotional trauma.

23         Count Two

24         In Count Two, Plaintiff asserts a violation of the Due Process Clause of the Fourteenth

25  Amendment and denial of access to the courts in violation of the First Amendment based on the

26  following allegations:

27         On February 23, 2011, Plaintiff filed a CDC 602 form regarding his left middle finger

28  being cut off while at work.  When he did not receive a CDC 695 Verification Form after two

weeks, Plaintiff filled out a CDCR 22 Inmate Request to the Appeals Coordinator at CSATF regarding the status of his appeal.  The response was that the appeal was never received.  During this time, Plaintiff was placed in Ad Seg for a false charge and not given any writing material for a couple of weeks.  Plaintiff resubmitted a 602 regarding his issue and it was screened out not once, but four times, even after following regulations by Defendant S. Zinani.  Plaintiff submitted another 602 to R. Hall, the Appeals Coordinator Supervisor, but it was screened out again by Defendant Zinani.  A few weeks later, Plaintiff saw R. Hall and asked him why he was not processing the appeals.  R. Hall stated, "If I process your 602 I open the door for a lawsuit, but without a processed appeal you can't take us to court."  Plaintiff was unable to exhaust his administrative remedies to the highest level.

Count Three

In Count Three, Plaintiff asserts a claim for "cruel and unusual punishment" in violation of the Eighth Amendment based on the following allegations:

On February 12, 2011, while working at his assigned work position at CSATF, Plaintiff's left middle finger was cut off when his finger was caught between the double door CRIMSCO Meals on Wheels cart and the block wall.  Plaintiff reported to his supervisors and went to the Facility D medical clinic.  Correctional Officer Cerda went to dining, found Plaintiff's fingertip and put it into a small plastic bag with ice.  At Facility D medical, Nurses Mulkern and Cagney wrapped Plaintiff's hand in a dressing and sent him by ambulance with his severed fingertip in a bag of ice to CSATF/SP CTC TTA.  Plaintiff then was seen by Nurse A. Kirby.  Nurse Kirby stated that Dr. G. Ugwueze was sending Plaintiff to the hospital.  Nurse Kirby gave Plaintiff a shot of pain medication.  Nurse Kirby then took Plaintiff's fingertip out of the plastic bag and put it in a new urine specimen cup filled with saline.  Plaintiff asked Nurse Kirby if he was supposed to keep it on ice, but Nurse Kirby stated that he was doing what the doctor ordered.  Plaintiff was sent to Mercy Hospital Bakersfield, about two hours away from CSATF/SP.  By the time Plaintiff was seen by the ER physician, it was several hours later.  When custody officers handed Plaintiff's severed fingertip in the cup of saline to the doctor, the doctor looked at it and said so much for being able to sew it back on because it had been soaking in a cup of saline.  The doctor

said it kills the tissue and threw it in the trash.  The doctor then cleaned up the end of Plaintiff's finger, wrapped it and sent Plaintiff back to CSATF with instructions and recommendations for ortho consultation.

Plaintiff alleges that Defendant Ugwueze's instruction ruined any chance of reattachment and demonstrates medical neglect.  Plaintiff further alleges that during the Health Care 602 process Defendant Kirby lied, saying he never put it in saline.  Plaintiff contends that such manipulation of the 602 grievance process demonstrates not only neglect, but also deliberate indifference on the part of Defendants Kirby and Ugwueze.

When Plaintiff returned to CSATF, they did nothing to refer Plaintiff to an orthopedist. The next day, on February 13, 2011, Plaintiff went to medical in excruciating pain and said he needed to see someone.  Plaintiff was told to go back to his cell and they would call him later. Plaintiff waited all day and night without sleep, crying in pain.  On February 14, 2011, Plaintiff asked his building officer to call medical.  The officer sent Plaintiff to the clinic where he was seen by Nurse Powell.

Nurse Powell changed and checked Plaintiff's dressing.  When Nurse Powell changed the dressing, there was broken bone and meat on the stump.  She told PA Byers that he needed to see Plaintiff, but PA Byers said he was busy.  Plaintiff pressed Nurse Powell about severe pain, inability to sleep and an ortho doctor referral.  Nurse Powell said that she would talk PA Byers and sent Plaintiff back to his cell.  Later that day, Plaintiff was given a pain pill.

On February 15, 2011, Plaintiff went to the medical clinic again because his finger was getting worse.  Plaintiff asked Nurse Powell if PA Byers wrote the referral to ortho, but she said no.  When Nurse Powell unwrapped Plaintiff's hand, Plaintiff's finger appeared discolored with broken bone.  Nurse Powell argued with PA Byers and made him check Plaintiff's hand.  PA Byers wrote an urgent referral to Dr. Smith and ordered some antibiotics for infection.  Dr. Smith told Plaintiff that he needed immediate surgery.

On February 17, 2011, Plaintiff underwent the first revision amputation, which took the end of his middle finger down to the first knuckle.  After surgery, PA Byers did not follow the surgeon's recommended post-operative plan of care, which included physical therapy and

1    significant pain management.   Plaintiff finally started receiving minimal medical care after he

2    filed many grievances.  Plaintiff alleges that when he submitted medical request forms, Nurse

3    Hunt would not triage Plaintiff or schedule him for the doctor.

4          In September 2011, after another surgery that removed Plaintiff's finger completely to

5    the knuckle of his fist, Dr. Smith asked PA Byers to put a medical hold on Plaintiff so that he

6    could complete the last surgery on Plaintiff's hand.  PA Byers refused and Plaintiff was

7    transferred to PVSP on November 1, 2011.  Plaintiff's hand was not fixed and he was in severe

8    pain.

9          On November 8, 2011, after his transfer to PVSP, Plaintiff saw his primary care

10   physician, PA J. Fortune, on the Facility A medical clinic.  Plaintiff explained the status of his

11   hand and his pending amputation surgery scheduled with Dr. Smith.  PA Fortune told Plaintiff

12   that Dr. Smith did not work at PVSP and that Plaintiff would have to see an ortho from PVSP.

13   PA Fortune then questioned Plaintiff about the dose of narcotic pain medication that he was

14   receiving for his hand.  PA Fortune told Plaintiff that he wanted to see what the new ortho doctor

15   had to say.  PA Fortune told Plaintiff that he would taper Plaintiff off the meds so that he would

16   not go through severe detox from long use of pain management narcotics.

17         On November 28, 2011, Plaintiff saw Dr. Lewis, a PVSP orthopedist.  Dr. Lewis

18   recommended that Dr. Smith or a University Medical Center hand specialist be used.

19         On November 28 and 30, 2011, Plaintiff put in CDC 7362 medical slips to see the doctor

20   regarding his medication.  Plaintiff explained that if his meds were cut off suddenly he would go

21   into severe detox.  Plaintiff was never called to medical.

22         On December 1, 2011, Plaintiff told LVN Gonzalez that PA Fortune was supposed to

23   taper Plaintiff's meds.  She told Plaintiff to fill out a 7362.  Plaintiff filled out another 7362 on

24   December 2, 2011.  By that time, Plaintiff had started vomiting and having diarrhea.  Plaintiff

25   told Correctional Officer Dutra that he had an emergency medical need and needed to see the

26   nurse.  Correctional Officer Dutra told Plaintiff to fill out a 7362.  Plaintiff filled out another

27   7362 on December 3, 2011.  By that time, Plaintiff had not slept or eaten since December 1,

28

2011, and had been vomiting and voiding non-stop.  Plaintiff told Defendant Gonzalez every night when she came to the building, but she said that she just passed out pills.

On December 6, 2011, Plaintiff was seen by Nurse Martin.  Nurse Martin told Plaintiff that he had an appointment with PA Fortune on December 9, 2011, and she was not going to do anything until then.  Plaintiff was sent back to his cell in severe detox.

On December 8, 2011, Plaintiff saw PA Fortune.  PA Fortune would not give Plaintiff pain medication even after Dr. Lewis said that Plaintiff needed another surgery.  Plaintiff asked why PA Fortune did not taper his medication.  PA Fortune stated that none of the nurses or officers told him.  Plaintiff asked to be expedited for surgery to improve the pain.  It took 3 months to get another consultation.  During that time, Plaintiff had extreme pain.  When Plaintiff finally received the surgery in April 2012, his post-operative care was neglected.  He was left in severe pain with days and months of no pain relief.  Plaintiff alleges that he is now losing more function of his hand and requires another surgery by Dr. Freeman.

Requested Relief

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

### III.   Deficiencies of Complaint

The allegations in Plaintiff's amended complaint are nearly identical to the allegations in his original complaint.  Despite the Court's previous order, Plaintiff has not addressed any of the identified deficiencies in his amended complaint.  However, as Plaintiff is proceeding pro se, he will be given a final opportunity to amend his complaint.  To assist Plaintiff, the Court provides the relevant pleading and legal standards that appear applicable to his claims.  Plaintiff should amend only those claims that he believes, in good faith, are cognizable in this action.

#### A.  Pleading Standards

##### 1.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities

secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

In his complaint, Plaintiff fails to link the following defendants to any of his claims: Allison, Kephart, Santoro, Denny, Doe 1, Doe 3 and Doe 5, Enenmoh, Sherman, Martinez, Conway, Baniga and Haggard.  If Plaintiff amends his complaint, he must link each defendant to a deprivation of a constitutional right.  In other words, Plaintiff must specifically allege what each defendant did or did not do that resulted in a violation of his constitutional rights.  Simply listing persons by their job descriptions in a conclusory manner is not sufficient.

## 2.  Eleventh Amendment and Official Capacity

To the extent Plaintiff seeks to bring claims against defendants in their official capacity, he may not do so.  The Eleventh Amendment prohibits suits for monetary damages against a State, its agencies, and state officials acting in their official capacities. Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  As such, the Eleventh Amendment bars any claim for monetary damages against defendants in their official capacities.

## 3.  Federal Rule of Civil Procedure 18

Plaintiff is raising different claims against different defendants at different facilities. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and

occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980).  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not bring claims against unrelated defendants in this action.  For example, Plaintiff may not pursue a claim against defendants at CSATF related to the initial injury, while simultaneously pursuing a claim for deliberate indifference to serious medical needs against defendants at PVSP.

If Plaintiff elects to amend his complaint, Plaintiff must choose which claims he wishes to pursue in this action.  If Plaintiff does not do so and his amended complaint sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined.

### B.  Legal Standards

#### 1.  Count One – Eighth Amendment Violation

In Count One, Plaintiff asserts a claim for violation of his Eighth Amendment rights resulting from the injury to his finger against Defendant Knight and Does 2 and 4. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  <u>E.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150-51 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

Here, Plaintiff has failed to allege sufficient facts to state a viable claim for violation of the Eighth Amendment arising from the loss of his fingertip.  Plaintiff has not demonstrated that prison officials knew of a substantial risk of serious harm to his safety from handles welded onto the Meals on Wheels tray cart and were deliberately indifferent to that risk.  At best, prison officials knew that handles had broken off or that "minor injuries occurred."  (ECF No. 26, p. 6.) Plaintiff will be given leave to cure this deficiency.

To the extent that Plaintiff seeks to pursue a tort claim for negligence under California law, the Government Claims Act requires exhaustion of those claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint.  <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty. (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995); <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 627 (9th Cir. 1988).

## 2.   Count Two – Fourteenth Amendment and First Amendment

In Count Two, Plaintiff complains of an inability to pursue his grievances regarding the loss of his fingertip in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff also complains of an inability to access the courts in violation of the First Amendment. ///

Due Process Claim

Certain of Plaintiff's claims arise from Defendants' involvement in the inmate appeals process.  Plaintiff cannot pursue any claims against staff relating to their involvement in the administrative review of his inmate appeals.  The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, Iqbal, 129 S.Ct. at 1949, and liability may not be based merely on Plaintiff's dissatisfaction with the administrative process or a decision on a grievance, Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

Access to Courts Claim

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15, 122 S.Ct. 2179, 2185–87, 153 L.Ed.2d 413 (2002). A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349–50.  The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353.

Here, Plaintiff alleges that his attempts to submit inmate appeals regarding his fingertip injury were frustrated by prison officials and he was prevented from exhausting his administrative remedies.  At this juncture, Plaintiff has not alleged (nor can he) an actual injury related to his inability to pursue administrative remedies.  Plaintiff is currently pursuing the claims related to his finger in this action.

### 3.   Count Three – Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir .2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' "and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir.2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9 t h Cir. 2010). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837.

As a general pleading deficiency, Plaintiff's deliberate indifference claim is brought against different defendants at different institutions involving separate instances occurring at different times.  Pursuant to the Court's direction, Plaintiff must choose which claim he seeks to pursue against which defendants in this action.  The Court now turns to Plaintiff's deliberate indifference claims against the individual defendants.

#### Kirby and Ugwueze

Plaintiff alleges that Defendants Kirby and Ugwueze acted with deliberate indifference by placing his fingertip in a cup of saline.  (ECF No. 26, pp. 9-10.)  At best, Plaintiff's allegations against Defendants Kirby and Ugwueze amount to medical malpractice or gross negligence.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d

1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate

indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th

Cir.1990).  Plaintiff's additional allegations regarding statements by Defendant Kirby during the

course of the administrative review process do not state a claim for deliberate indifference.

Smith

Plaintiff alleges that Defendant Smith performed surgery on Plaintiff and made

recommendations for Plaintiff's post-operative care.  (ECF No. 26, p. 11.)  Plaintiff has not

alleged that Defendant Smith knew of a serious medical need and failed to adequately respond.

Simmons, 609 F.3d at 1018.

Freeman

Plaintiff alleges only that he needs another surgery by Defendant Dr. B. Freeman.  (ECF

No. 26, p. 14.)  Plaintiff has not alleged that Defendant Freeman knew of a serious medical need

and failed to adequately respond.  Simmons, 609 F.3d at 1018.

Martin

Plaintiff alleges that Defendant Martin refused to do anything on December 6, 2011,

because Plaintiff had an appointment with Defendant Fortune on December 9, 2011.  Plaintiff

then saw Defendant Fortune on December 8, 2011.  (ECF No. 26, pp. 13-14.)  Plaintiff fails to

state a claim against Defendant Martin based on a brief, isolated incident of neglect.  Wood, 900

F.2d at 1334 (mere negligence or isolated occurrences of neglect are insufficient to establish

deliberate indifference).

Dutra

Plaintiff alleges that he complained to Defendant Dutra on December 2, 2011, that he had

emergency medical needs, but was told to fill out a 7362.  Plaintiff filled out the 7362 on

December 3, 2011.  (ECF No. 26, p. 13)  Plaintiff fails to state a claim against Defendant Dutra

based on a brief, isolated incident.  Wood, 900 F.2d at 1334 (mere negligence or isolated

occurrences of neglect are insufficient to establish deliberate indifference).

///

///

1   Byers, Hunt, Fortune, and Gonzalez

2       At the pleading stage, Plaintiff has alleged deliberate indifference claims against

3   Defendants Byers, Hunt, Fortune, and Gonzalez.  However, Defendants Byers and Hunt were

4   involved in Plaintiff's care at CSATF before November 2011, whereas Defendants Fortune and

5   Gonzalez were involved in Plaintiff's care at PVSP after November 2011.  As noted above,

6   Plaintiff may not pursue all of these claims in a single action.  Accordingly, if Plaintiff elects to

7   amend his complaint, he must choose which claims he wishes to pursue.

8                    **4.  Declaratory Relief**

9           In addition to damages, Plaintiff seeks a declaration that his rights were violated. "A

10  declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

11  judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood

12  Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be

13  denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

14  issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced

15  by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir.1985). In the event

16  that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be

17  a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any

18  defendant violated Plaintiff's rights is unnecessary.

19                   **5.  Injunctive Relief**

20          Plaintiff seeks injunctive relief in the form of pain medication from defendants.

21  However, Plaintiff is no longer incarcerated at either CSATF or PVSP.  Instead, he has been

22  transferred to R. J. Donovan Correctional Facility.  As a result, his claim for injunctive relief is

23  now moot.  See Holt v. Stockman, 2012 WL 259938, *6 (E.D. Cal. Jan.25, 2012) (a prisoner's

24  claim for injunctive relief is rendered moot when he is transferred from the institution whose

25  employees he seeks to enjoin); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir.

26  2007).

27  ///

28  ///

**IV.      Conclusion and Order**

Plaintiff's complaint violates Federal Rule of Civil Procedure 18 and contains numerous pleading deficiencies.  However, the Court will provide Plaintiff with a final opportunity to file an amended complaint to cure the identified deficiencies. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, <u>Iqbal</u>, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>George</u>, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a complaint form;

2.      Plaintiff's amended complaint is dismissed for failure to comply with Federal Rule of Civil Procedure 18;

3.      Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint; and

4.      <u>If Plaintiff fails to file a second complaint in compliance with this order, this action will be dismissed for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **June 8, 2015**                        /s/ *Barbara A. McAuliffe*
                                            UNITED STATES MAGISTRATE JUDGE